IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CT-3252-FL

| | |
|---|---|
| MARION L. SHERROD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COLBERT L. RESPASS, SEAN )<br>DILLARD, CAPT. OLIVER, and )<br>MARCEL SLEDGE, )<br>)<br>Defendants.[1] )<br>) | ORDER |

This matter is before the court on plaintiff's motion for summary judgment (DE 74) and defendants' motion for summary judgment (DE 84). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, this court grants defendants' motion and denies plaintiff's motion.

**STATEMENT OF THE CASE**

On September 25, 2014, plaintiff, a state inmate, filed this civil rights action, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff initially alleged that defendants George T. Solomon ("Solomon"), Nurse Patterson ("Patterson"), Capt. Oliver ("Oliver"), Felix Taylor ("Taylor"), Colbert L. Respass ("Respass"), Sean Dillard ("Dillard"), and Rahim Akbar ("Akbar") violated his Eighth and Fourteenth Amendment rights. See Compl. (DE 1). On June 22, 2015, this court conducted a

---

[1] The court has constructively amended the caption of this order to reflect the dismissal of five previously-named defendants: George T. Solomon, Felix Taylor, Nurse Patterson, Rahim Akbar, and Hiram Beasley.

frivolity review pursuant to 28 U.S.C. § 1915 and determined that it did not clearly appear from the face of plaintiff's complaint that he was not entitled to relief. Therefore, the matter was allowed to proceed.

On June 29, 2015, plaintiff file a motion to transfer this case to the Western District of North Carolina, which was denied. On October 19, 2015, defendants Dillard, Oliver, Respass, Solomon and former defendants Patterson and Taylor filed a motion to dismiss the complaint against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a) and relevant case law.

On November 13, 2015, plaintiff filed two motions to amend his complaint. On December 31, 2015, this court denied one motion as moot. This court also denied the motion to dismiss as moot and granted plaintiff's other motion to amend his complaint. Plaintiff was directed to file a particularized complaint within 14 days. On January 15, 2016, plaintiff filed his particularized complaint.

On February 18, 2016, this court conducted a review of the particularized complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). This court noted that plaintiff's claims arose out of alleged excessive use of force incidents and related disciplinary proceedings. This court dismissed plaintiff's action against former defendants Solomon and Taylor without prejudice for failure to state a claim. This court also dismissed former defendant Patterson without prejudice because the particularized complaint failed to include any specific allegations against him/her. Plaintiff was allowed to proceed with his claims against defendants Respass, Dillard, Oliver, and Assistant Unit Manager Marcel Sledge ("Sledge") and former defendants Akbar and Officer Hiram Beasley ("Beasley").

On April 8, 2016, plaintiff filed another motion to amend his complaint. On May 2, 2016, plaintiff filed a motion for judgment on the pleadings and a motion for default judgment. On June

22, 2016, plaintiff filed a "motion to relate NCIC Tort Claim."

On July 25, 2016, plaintiff's motion to amend was granted, and his motion for judgment on the pleadings was denied. Plaintiff's action against former defendants Akbar and Beasley was dismissed without prejudice for failure to obtain service in accordance with the requirements set forth in Federal Rule of Civil Procedure 4(m). On September 15, 2016, this court entered a case management order.

On February 21, 2017, plaintiff filed another motion for leave to amend his complaint and a motion for leave to amend his motion for summary judgment. On February 27, 2017, plaintiff filed a motion for judgment as a matter of law. This court denied plaintiff's motion to amend his complaint, granted his motion to amend his motion for summary judgment, and denied his motion for judgment as a matter of law.

On November 17, 2016, plaintiff filed the instant motion for summary judgment, which is supported by a verified complaint (DE 34), memorandum of law (DE 75), plaintiff's declarations (DE 76, 83, 107, 108), and exhibits consisting of medical records, (DE 83-3), two Fourth Circuit Court of Appeals's cases (DE 83-3), legal mail (DE 83-3), legal materials for an unrelated case (DE 83-3), and medical records (DE 83-5). On February 22, 2017, defendants filed a response in opposition.

On February 22, 2017, defendants filed their motion for summary judgment, which is supported by a memorandum (DE 85), a statement of material facts (DE 86), and an appendix to the statement of material facts (DE 87), which includes the following: defendant Respass's affidavit (DE 87-1), plaintiff's offender information screen (DE 87-2), North Carolina Department of Public Safety ("NCDPS") Internal Investigation Report (DE 87-3), former defendant Akbar's resignation

3

(DE 87-4), former defendant Akbar's resignation memo (DE 87-5), defendant Oliver's affidavit (DE 87-6), defendant Stokley's affidavit and video exhibits (DE 87-8), defendant Dillard's affidavit (DE 87-9), and defendant Sledge's affidavit (DE 87-10). On May 9, 2017, plaintiff filed a memorandum in opposition.

## STATEMENT OF THE FACTS[2]

Except as otherwise noted below, the undisputed facts are as follows: in April of 2014, plaintiff was incarcerated at Pasquotank Correctional Institution ("Pasquotank C.I.").[3] (See Part. Compl. (DE 34) at 7). Defendants are all current or retired NCDPS correctional staff members who were assigned to Pasquotank C.I. during the same time period. (See App. (DE 87) Ex. 6 ¶ 3; Ex. 10 ¶ 3; Ex. 9 ¶ 4).

On April 9, 2014, plaintiff was escorted to medical and then to segregation by former defendants Akbar and Beasley. (See Part. Compl. (DE 34) ¶ V). During the escort, former defendant Akbar and plaintiff had a verbal confrontation regarding the way former defendant Akbar was treating plaintiff. (See id.). In particular, former defendant Akbar was yanking the handcuffs behind plaintiff's back in a manner that caused him pain. (See id.) Former defendant Beasley and a sergeant overhead the heated words between plaintiff and former defendant Akbar, which included former defendant Akbar's threats to "kick [plaintiff's] ass" and "fucking (sic) [plaintiff] up." (See id.; App. (DE 87) Ex. 8 ¶ 6).

As a result of the April 9, 2014, incident, plaintiff was placed in segregation for

---

[2] Defendants raise a number of issues with plaintiff's prison record and personal history. (See Stat. Mat. Facts (DE 86) at 2). These issues are not pertinent to the matters before this court.

[3] Since December 16, 2004, plaintiff has continually been in the custody of NCDPS. (See App. (DE 87) Ex. 2).

4

approximately seven days. (See Part. Compl. (DE 34) ¶ V). Before being released, defendant Sledge came to plaintiff's cell and asked if plaintiff would have any further problems with former defendant Akbar. (See id.) Plaintiff responded, "no," because he wanted to be released and didn't have any score to settle with former defendant Akbar. (See id.)

During the morning of April 23, 2014, plaintiff was sitting in the day room when former defendants Akbar and Beasley walked past. (See id.) Former defendant Akbar asked plaintiff when he "got out" and what cell he was in. (See id.)

Later that morning, former defendant Akbar, "all alone," entered Unit 3 C-block without his duty belt, which held his radio, baton, and handcuffs.[4] (See id.) Former defendant Akbar came directly to plaintiff's cell and told Inmate Best to "keep it moving and close the cell door behind him." (See id.) Former defendant Akbar proceeded to hit plaintiff, wrestle with him, and grab his testicles. (See id.) Plaintiff admitted that he struck former defendant Akbar several times, but plaintiff claims he acted only in self defense and then exited the cell.[5] (See id; App. (DE 87) Ex. 8 ¶ 6). Former defendant Akbar challenged plaintiff to come back to the cell so they could finish the fight, but plaintiff refused.[6] (See App. (DE 87) Ex. 8 ¶¶ 6, 7). As a result of the attack by former

---

[4] Plaintiff's allegations at this point are unclear. Plaintiff alleges that former defendant Beasley saw former defendant Akbar remove his duty belt, but plaintiff also alleges that former defendant Akbar was "all alone" when he entered the cell block without his duty belt. (See Part. Compl. (DE 34) ¶ V). Thus, it is not clear how plaintiff knew that former defendant Beasley saw former defendant Akbar without his duty belt.

[5] Plaintiff supports his self defense claim by noting that former defendant Akbar was 6'3" tall and weighed 350 lbs. (See id.)

[6] According to former defendant Akbar, he and plaintiff were arguing, and plaintiff told him that he was not as tough as he thinks he is and plaintiff would show him. (See App. (DE 87) Ex. 8 ¶ 7). Former defendant Akbar entered the cell, and plaintiff took a swing at him. (See id.) Plaintiff missed, but former defendant Akbar fell and plaintiff started punching him in the face. (See id.) They fell out of the cell into the day room with plaintiff on top of former defendant Akbar punching him in the face. (See id.) Plaintiff went to sit in the day room, and former defendant Akbar told plaintiff to come back into the cell to finish the fight. (See id.)

5

defendant Akbar, plaintiff alleges he has suffered an aggravation of a previous spinal injury and an injury to his left testicle.[7] (See Part. Compl. (DE 34) ¶ V).

Former defendant Beasley and Officer Spruill entered C-block and asked (unidentified people) where former defendant Akbar was.[8] (See id.) They found former defendant Akbar on the floor and dazed. (See App. (DE 87) Ex. 8 ¶ 5). Plaintiff said, "[Officer Akbar] needs to get out of here." (See id.) Former defendant Akbar said he had fallen and hit his head on the sink, but plaintiff said he "kicked [Officer] Akbar's ass." (See id.) Former defendant Beasley and Officer Spruill did not question why former defendant Akbar was in plaintiff's cell, and they assisted him out of C-block. (See Part. Compl. (DE 34) ¶ V).

At approximately 11:23 a.m. that day, Correctional Sergeant Weldon D. McKnight brought former defendant Akbar to the Unit Manager's Office. (See App. (DE 87) Ex. 10 ¶ 4). Former defendant Akbar had facial swelling. (See id.) When asked how he injured his face, former defendant Akbar responded that he slipped and fell in plaintiff's cell and hit his head on the sink. (See id.)

Defendant Sledge did not think that the swelling, which was evident on both sides of former defendant Akbar's face, seemed consistent with his story that he fell. (See id.) Defendant Sledge began a preliminary investigation into the matter by questioning other staff members and reviewing video footage from the location of the alleged fall. (See id.) Defendant Sledge determined that the video footage showed former defendant Akbar enter plaintiff's cell without wearing his duty belt. (See id.) Defendant Sledge also concluded that the video showed former defendant Akbar fall out

---

[7] Defendant Respass's recollection is that plaintiff was not injured. (See id. Ex. 1 ¶ 5).

[8] Former defendant Beasley's recollection is that when he responded to the incident in Dorm 1C, he saw former defendant Akbar and plaintiff "having words." (See id. Ex. 8 ¶ 5).

of plaintiff's cell on his back, plaintiff on top of him punching, and then plaintiff getting off former defendant Akbar and going to the common area to sit down. (See id.)

Plaintiff was then called to defendant Sledge's office and asked about what happened in his cell. (See Part. Compl. (DE 34) ¶ V). Plaintiff told his version of the events, and he was placed in segregation. (See id.)

At approximately 11:30 a.m. that day, Unit Manager Kem Spence and former defendant Akbar went to Captain Stokley's office. (See App. (DE 87) Ex. 8 ¶ 4). Former defendant Akbar's face was bruised, and his eye was blackened and swollen. (See id.) When former defendant Akbar was asked how he injured his face, he told Captain Stokley that he fell and struck his face on an inmate's toilet. (See id.) Captain Stokley did not believe this account matched up with bruises, and it appeared that someone had beaten former defendant Akbar. (See id.) Former defendant Akbar admitted plaintiff had hit him one time, and he then fell and struck his head on the toilet. (See id.) Captain Stokley ordered that former defendant Akbar be sent for medical care. (See App. (DE 87) Ex. 8 ¶ 4).

After former defendant Akbar left his office, Captain Stokley met with former defendant Beasley and Officer Spruill, the two officers who had responded to the incident in plaintiff's cell. (See id. ¶ 5). Captain Stokley also talked with Officer Felton, who was in the control area at the time of the incident and called for assistance. (See id.) The three officers did not see the physical confrontation that took place in plaintiff's cell. (See id.)

Defendant Sledge and Captain Stokley viewed the only video footage available from the April 23, 2014, incident. (See id. Ex. 10 ¶ 4; Ex. 8 ¶ 8; Ex. 6 Ex. A). Defendant Sledge and Captain Stokley both saw on the video that former defendant Akbar went into plaintiff's cell and then former

7

defendant Akbar fell out of the cell with plaintiff on top punching him in the face. (See id. Ex. 10 ¶ 4; Ex. 8 ¶ 8). Plaintiff was then seen getting up and going to the day room. (See id. Ex. 10 ¶ 4; Ex. 8 ¶ 8; Ex. 6 Ex. A). The video footage does not show what took place inside plaintiff's cell. (See id. Ex. 10 ¶ 4; Ex. 8 ¶ 8; Ex. 6 Ex. A). Moreover, there are no eye witnesses. (See id. Ex. 8 ¶ 7).

Plaintiff was charged with assaulting former defendant Akbar. (See id. Ex. 9 ¶ 4; Ex.6 ¶ 6). On April 28, 2014, a disciplinary hearing was held before defendant Dillard, a disciplinary hearing officer. (See id. Ex. 9 ¶ 4). During the hearing, plaintiff asked that the video of the incident be reviewed. (See id.) Defendant Dillard contacted defendant Oliver, the officer who was assigned to review the video.[9] (See id.)

There were two cameras that recorded portions of the April 23, 2014, incident, and defendant Oliver reviewed both. (See id. Ex. 6 ¶ 8). Defendant Oliver determined that the video showed former defendant Akbar enter plaintiff's cell and then both former defendant Akbar and plaintiff exiting the cell. (See id.) Defendant Oliver could not determine what happened inside the cell. (See id.) Defendant Oliver provided a DC-138B report stating that the video did not support plaintiff's claim that he was attacked by former defendant Akbar. (See id.)

Defendant Dillard reviewed defendant Oliver's statement. (See id. Ex. 9 ¶ 5). Defendant Dillard interpreted the form to mean that the video could neither substantiate nor refute plaintiff's allegations. (See id.) Defendant Dillard determined that plaintiff was, at a minimum, at least partially responsible for instigating the fight with former defendant Akbar. (See id. Ex. 9 ¶ 6).

---

[9] Defendants represent that, for security reasons, videos of correctional institutions are not shown to inmates. (See id. Ex. 9 ¶ 5) When an inmate requests camera video as physical evidence, the investigating officer should have a staff member whose duty it is to review all video that may show what took place and write a DC-138B report attesting to what the video shows. (See id. Ex. 6 ¶ 7) If the video does not support the inmate's allegations, it should be so stated on the DC-138B report. (See id.) The purpose of this procedure is to maintain the security of the facility by preventing inmates from learning what areas are and are not recorded on camera. (See id.)

Therefore, defendant Dillard substantiated the charge against plaintiff (see id), and on April 28, 2014, plaintiff was found guilty of assaulting former defendant Akbar (see Part. Compl. (DE 34) ¶ V).

Plaintiff alleges that, at his disciplinary hearing, defendants Dillard and Oliver violated his rights to due process by withholding evidence that was favorable to him. (See id.) According to plaintiff, former defendant Solomon joined in the "conspiracy" with his subordinates with the intent of denying plaintiff's rights to due process. (See id.)

On or about May 5, 2014, former defendant Taylor told plaintiff that the recommendation to Maximum Control ("M-Con") would be forgotten if he would stop filing grievances. (See id.) The M-Con recommendation was "forgotten," and plaintiff was allowed out of segregation in 60 days. (See id.)

An investigation was conducted by NCDPS's Office of Special Investigations. (See App. (DE 87) Ex. 1 ¶ 5). Based on the findings, a dismissal meeting was held concerning former defendant Akbar, and at that meeting, he voluntarily resigned. (See id.) Former defendant Akbar's NCDPS personnel record reflects that the reason for his separation was that he "Resigned in Lieu of Dismissal." (See id.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

9

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotations omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489

(4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

1. Plaintiff's Motion for Summary Judgment

Plaintiff has failed to meet his burden of informing this court of the basis for his motion and identifying those portions of the evidence and record that demonstrate there is no genuine issue of material fact with respect to <u>this</u> case.[10] In particular, plaintiff has failed to point to admissible evidence that demonstrates the essential elements of his claims, which are based on violations of the Eighth and Fourteenth Amendments. Rather, plaintiff's motion is supported by his own bare assertions and lots of documentation that does not lend support for his claims against the remaining defendants. In sum, plaintiff has failed to establish there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Consequently, plaintiff's motion for summary judgment must be DENIED.

2. Defendants' Motion for Summary Judgment

In their motion for summary judgment, defendants contend they are entitled to summary judgment because no genuine issue of material fact exists and they are entitled to judgment as a matter of law. (Mot. Summ. J. (DE 84) at 1). Defendants further contend that the surveillance video footage documenting the April 23, 2014, incident, in addition to the other materials they submitted

---

[10] Plaintiff brings up a variety of unrelated matters. (See Pl.'s Decl. (DE 83) at 4). For example, plaintiff alleges that as early as 2010, he had issues with his Constitutional rights being violated. (Id.) Plaintiff alleges there was a deliberate indifference to his medical needs. (Id.) In particular, plaintiff claims that he was placed on a top tier cell, despite the fact that he had restrictions imposed because of his seizure disability. (Id.) Plaintiff also alleges that he fell down a flight of stairs while fully restrained. (Id.)

in support of their motion, precludes this court from finding a constitutional violation by defendants. (Id.) Finally, defendants aver that qualified immunity bars plaintiff's claims against them. (Id.)

Defendants conclude that plaintiff has not and cannot present evidence sufficient to permit reasonable jurors to find in his favor. (Mot. Summ. J. Mem. (DE 85) at 8). Defendants further conclude that summary judgment should be granted in their favor, and all of plaintiff's claims against them should be dismissed. (Id.)

### a. Eighth Amendment claims

Plaintiff alleges that defendants failed to protect him against the danger posed by former defendant Akbar. (See Part. Compl. (DE 34) ¶ V). According to plaintiff, former defendant Akbar was under their supervision. (See id.) Plaintiff's allegations implicate both direct and supervisory liability. This court will address each in turn.

#### i. Direct Liability

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials." Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). In particular, the duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Farmer, 511 U.S. at 832).

As the Supreme Court has stated, "[b]eing violently assaulted in prison is simply not part of the penalty the criminal offenders pay for their offenses against society." Farmer, 511 U.S. at 834 (citations omitted). However, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prisoner officials responsible for the victim's safety."

12

Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015). A prison official violates the Eighth Amendment through deliberate indifference if he is aware of a substantial risk of serious harm to the inmate, Farmer, 511 U.S. at 837, and the prison official disregards that risk. Cox v. Quinn, 828 F.3d 227, 238 n.4 (4th Cir. 2016).

In this case, defendants have submitted a video in support of their motion for summary judgment. (See Appx. (DE 87) Ex. 6 Ex. A). This court's review of the video leads to the conclusion that it does not constitute favorable evidence in this case, for either plaintiff or defendants, because it is not at all clear what is taking place. In general, the video, taken shortly around 11:00 a.m. on April 23, 2014, shows the common area of a mens' institution. Several inmates and a few officers are visible over the course of the video. It shows, at most, people coming and going out of the frame, but neither plaintiff nor any defendant is recognizable.

As for the other evidence before this court, viewed in a light most favorable to plaintiff, it reflects that former defendant Akbar did create a substantial risk of harm to plaintiff. Defendants, however, are entitled to summary judgment on plaintiff's Eighth Amendment claim because there is no evidence before this court that defendants actually knew of and disregarded this risk. In fact, the evidence reveals that, prior to April 23, 2014, defendants Respass, Oliver, and Sledge and Captain Stokley had no knowledge of any disagreement between former defendant Akbar and plaintiff. (See id. Ex. 1 ¶ 6; Ex. 6 ¶ 10; Ex. 10 ¶ 5; Ex. 8 ¶ 9).

Plaintiff alleges that former defendant Beasley was present on April 9, 2014, when he and former defendant Akbar exchanged words and also saw former defendant Akbar remove his duty belt on April 23, 2014. Even viewing these facts in the light most favorable to plaintiff, there is no evidence before this court that put defendants on notice that former defendant Akbar intended to

13

harm plaintiff. Moreover, the evidence does not suggest that former defendant Beasley reported these exchanges to defendants. Consequently, plaintiff's claims for direct liability for deliberate indifference to a risk of harm to him must fail.

        ii.        Supervisory Liability

Supervisory liability under § 1983 may not be based on the theory of <u>respondeat superior</u>. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 693-94 (1978); <u>Baynard v. Malone</u>, 268 F.3d 228, 235 (4th Cir. 2001). Liability of supervisory officials is based on supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries inflicted on those committed to their care. <u>Baynard</u>, 268 F.3d at 235.

To establish § 1983 supervisory liability, a plaintiff must show: 1) the supervisor had knowledge, actual or constructive, that his subordinate was engaged in conduct that presented a pervasive and unreasonable risk of constitutional injury to citizens like plaintiff; 2) the supervisor's response was so inadequate that it amounted to deliberate indifference or tacit authorization of the alleged offense practices; and 3) there was a causal link between the supervisor's failure to act and plaintiff's constitutional injury. <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994).

In this case, plaintiff cannot hold defendants liable as supervisors because he has not shown they were aware of conduct by former defendant Akbar that created a pervasive and unreasonable risk of constitutional injury, their response to former defendant Akbar's conduct was so inadequate that it amounted to deliberate indifference or tacit authorization, and therefore, was a causal link between their inaction and plaintiff's constitutional injury.

To the extent plaintiff claims that defendant Sledge was put on notice of the alleged danger posed by Officer Akbar, based on plaintiff's conversation with defendant Sledge, this must fail.

(See Part. Compl. (DE 34) at 7). After the verbal altercation between former defendant Akbar and plaintiff, which took place on April 9, 2014, plaintiff was put in segregation for "about seven days." (Id.) Plaintiff alleges that before he could be released defendant Sledge came to him and asked to see if he would have any further problems with former defendant Akbar. (Id.) Plaintiff concedes that he advised defendant Sledge that there would be "no problem." (Id.) Plaintiff explains that he gave this response only because wanted to be released, and he personally did not have a score to settle with former defendant Akbar. (Id.)

Plaintiff has not alleged that defendants were involved in the alleged conversation he suggests provided notice that former defendant Akbar was a threat.[11] In sum, plaintiff's claims premised on supervisory liability must fail. Accordingly, defendants are entitled to summary judgment on these claims.

In light of the foregoing, plaintiff has failed to establish an Eighth Amendment violation. Because plaintiff is unable to establish a constitutional violation, defendants are entitled to qualified immunity on plaintiff's Eighth Amendment claims. See Gregg v. Ham, 678 F.3d 333, 341 n.7 (4th Cir. 2012) ("To prevail under qualified immunity, [defendant] has to show either that there was no constitutional violation or that the right violated was not clearly established."). Accordingly, defendants' motion for summary judgment is GRANTED.

      b.     Fourteenth Amendment claims

Plaintiff alleges that, on April 28, 2014, without due process, he was found guilty of

---

[11] Defendants make the following assertions: Defendants Oliver, Respass, and Dillard were not former defendant Akbar's direct supervisors, and therefore, they would not have been aware of his day-to-day activities. (See Mot. Summ. J. Mem. (DE 85) at 15). Moreover, former defendant Akbar was never disciplined for inappropriate conduct with inmates at any time prior to the incident with plaintiff. (Id.) These statements, true or not, will not be relied upon by this court because they are made with no citation to record. Likewise, the court fails to see a source in the record, which supports these assertions.

assaulting former defendant Akbar. (See Part. Compl. (DE 34) ¶ V). Plaintiff further alleges that, at his disciplinary hearing, defendants Dillard and Oliver violated his due process rights by withholding evidence that was favorable to him. (See id.) Plaintiff's allegations arguably implicate both procedural and substantive due process.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; accord Meachum v. Fano, 427 U.S. 215, 223 (1976). In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In order to demonstrate a liberty interest meriting procedural due process protections, an inmate must show: "(1) denial of an interest that can arise either from the Constitution itself or from state laws or policies," and (2) "this denial imposed on him an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015) (internal quotations omitted).

When faced with the loss of good-conduct time, a prisoner is entitled to certain due process protections for prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974). To satisfy procedural due process, a prisoner must be provided with the following: 1) advance written notice of the charges, 2) a hearing, 3) the right to call witnesses and present evidence when it is not inconsistent with institutional safety and concerns, and 4) a written decision. Id. at 564-71; Baker v. Lyles, 904 F.2d 925, 929 (4th Cir. 1990). There is, however, no constitutional right to confront and cross-examine witnesses or have retained or appointed counsel at a prison disciplinary

16

hearing. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 504-05 (4th Cir. 2004).

Substantive due process is met if "some evidence supports the decision by the prison disciplinary board," which is satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Baker, 904 F.2d at 932.

As the materials submitted by him reflect, plaintiff was provided with notice of the charge against him and his rights with respect to the disciplinary process. (See Pl.'s Decl. (DE 76-1) at 145). Plaintiff was afforded a fully disciplinary hearing, which provided him with an opportunity to present evidence and call witnesses. (Id. at 136-38). NCDPS practices do not allow inmates to review video based on security concerns associated with such access. (See App. (DE 87) Ex. 9 ¶ 5, Ex. 6 ¶ 7). Even so, defendant Oliver reviewed the footage in lieu of showing it to plaintiff, and defendant Oliver concluded that it did not show what plaintiff claimed it did. (See id. ¶ 8). In particular, plaintiff claimed that former defendant Akbar attacked him in his cell, and he did not hit or strike former defendant Akbar while former defendant Akbar was on the ground. (Pl.'s Decl. (DE 76-1) at 136-37, 147, 154). This court's review of the video submitted by defendants does not support or detract from these claims. (See App. (DE 87) Ex. 6 Ex. A).

The witness statements and the evidence of former defendant Akbar's injuries provide "some evidence" to support the determination of the disciplinary hearing officer. Plaintiff's allegations that he received a legally-insufficient hearing fail to state a constitutional violation. Thus, there is no constitutional violation, and defendants are entitled to qualified immunity for those claims. See

Gregg, 678 F.3d at 341 n.7 ("To prevail under qualified immunity, [defendant] has to show either that there was no constitutional violation or that the right violated was not clearly established."). Defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE 84) is GRANTED, and plaintiff's motion for summary judgment (DE 74) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 18th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge